IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LORRAINE M. PERRY )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>AT&T SERVICES, INC. )<br>Serve: CT Corporation System )<br>   (Registered Agent) )<br>   4701 Cox Road, Suite 285 )<br>   Glen Allen, VA 23060 )<br>)<br>and )<br>)<br>AT&T/WARNER MEDIA PENSION )<br>BENEFIT PLAN )<br>Serve: c/o AT&T Services, Inc. )<br>   CT Corporation System )<br>   (Registered Agent) )<br>   4701 Cox Road, Suite 285 )<br>   Glen Allen, VA 23060 )<br>)<br>   Defendants. ) | Civil Action No.: 3:20cv571 |

## COMPLAINT

Plaintiff Lorraine M. Perry ("Ms. Perry"), by counsel, states as follows as her Complaint against defendants AT&T Services, Inc. ("AT&T" or the "Company") and AT&T/Warner Media Pension Benefit Plan (the "Plan").

**NATURE OF ACTION**

1. This is an ERISA[1] case that involves false promises about pension benefits. Ms. Perry's late husband, Francis M. Perry ("Mr. Perry"), worked at AT&T and/or related

---

[1] "ERISA" is the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*.

companies until he took early retirement. To induce Mr. Perry into early retirement, the Company promised him – *in writing* -- five extra years of service. Those extra years most directly translated into a higher monthly benefit amount for Mr. Perry. Those five extra years also qualified Mr. Perry's widow, Ms. Perry, for a pensioner death benefit under the Plan. Indeed, in the years before his passing, Mr. Perry received two letters from AT&T's representatives *confirming* that Ms. Perry was eligible for the benefit. They even specified the exact amount to be paid. After Mr. Perry's passing, however, AT&T disclaimed its prior representations and denied Ms. Perry's claim for the death benefit. In other words, Ms. Perry was either wrongfully denied her claim for the death benefit or she was lied to about it for years by AT&T. As such, Ms. Perry now brings this action (i) to enforce her rights under § 1132(a)(1)(B) of ERISA to receive the death benefit she is entitled to under the Plan; (ii) to declare that AT&T failed to provide her a "full and fair review," as required under ERISA, regarding her claim for the death benefit; and (iii) alternatively, to enforce her rights under § 1132(a)(3) of ERISA to receive appropriate equitable relief – in the form of a surcharge for the amount of the death benefit payment – against AT&T for its breach of fiduciary duty in failing to give Ms. Perry and her husband accurate information about Ms. Perry's eligibility for the death benefit.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3. Venue is proper in this district and division pursuant to 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391, and Local Rule 3(B)(4), as this is the district and division where a substantial part of the events or omissions giving rise to the claims herein occurred.

**PARTIES**

4. Perry is an individual resident of Richmond, Virginia. At all relevant times herein, she is, was and has been, a beneficiary of the Plan, as defined under § 1002(8) of ERISA, through her status as the spouse of a covered Plan participant.

5. The Plan, sponsored by AT&T, is an employee pension benefit plan as defined under § 1002(2) of ERISA and is governed by ERISA.

6. At all relevant times herein, AT&T, particularly through the AT&T Benefit Plan Committee (the "Committee"), is, was, and has been the plan administrator, as that term is defined under § 1002(16) of ERISA, for the Plan.

7. The Plan is funded through employer contributions.

**FACTS**

8. After working for four AT&T-affiliated companies (AT&T Bell Laboratories, AT&T Technologies, Inc., Western Electric Company, and AT&T Corp.) for almost twenty-five years, Mr. Perry took early retirement on December 7, 1989, with an effective date of December 30, 1989.

9. At the time of his early retirement, Mr. Perry had accumulated 24 years, nine months, and 21 days of actual service with these companies.

10. Mr. Perry took early retirement because AT&T offered him (and employees like him) a special retirement package dubbed the "Management Pension Enhancement and Special Retirement Option."

11. According to this special package, any eligible AT&T employee who – like Mr. Perry – elected to retire effective December 30, 1989 would receive, *inter alia*, five additional years "for purposes of determining eligibility for a service pension and the amount of any early retirement discount."

12. The extra five years were significant for purposes of Mr. Perry's service pension eligibility. *Without* the five extra years, Mr. Perry ***did not*** have at least 25 years of service and thus was ***not*** eligible for a "service pension" under the Plan. Instead, he was only eligible for what the Plan called a "deferred vested pension." *With* the five extra years, however, Mr. Perry ***did*** have at least 25 years of service and thus ***was*** eligible for a "service pension."

13. As a result of his election to retire early under the special package, Mr. Perry was paid enhanced benefits and was paid, beginning on December 31, 1989, a "service pension" under the Plan.

14. *Because* Mr. Perry, based on the special package, was receiving a "service pension" under the Plan, *Ms. Perry* (Mr. Perry's spouse) was eligible for the pensioner death benefit under the Plan. As the Plan states: "In the event of the death of any person who at the time of death ***is receiving*** a [service pension] . . . , the Committee . . . in its discretion . . . may authorize a Death Benefit to the spouse or dependent relatives of the pension." (emphasis added).

15. Over the next three decades, the Plan's representatives twice confirmed Ms. Perry's eligibility for the death benefit.

16. First, in a letter dated June 30, 1998, AT&T, after an inquiry by Mr. Perry, stated that Ms. Perry *would* receive a death benefit upon his death:

> This is in reply to your request for information concerning the benefits that would be payable ***upon your death***.
>
> The proceeds of the Company's Sickness ***Death Benefit***, amounting to $83,880.00 ***will be paid*** if you are survived by a qualified beneficiary under the provisions of the plan. . .

**Exhibit A** (emphasis added).

17. Seventeen years later, after another inquiry by Mr. Perry, AT&T again confirmed that Ms. Perry would receive the death benefit.

18. At first, AT&T seemed confused about the matter. This is because, by letter dated October 1, 2015, AT&T told Mr. Perry that Ms. Perry was ***not*** eligible for the death benefit because he had not attained 25 full years of actual employment at the time of his early retirement. **Exhibit B.**

19. However, after Mr. Perry explained (in an October 26, 2015 letter; **Exhibit C**) that he had taken early retirement a mere two months before his 25 years of service because of AT&T's special package (which *granted* him a true "service pension"), AT&T reversed its initial analysis, said "yes" Ms. Perry *would* receive the death benefit, and said the amount of the benefit – consistent with its 1998 representation – would be $83,880. **Exhibit D**. The letter also expressly told *Ms. Perry*, as Mr. Perry's spouse, to "review the information presented in this summary." *Id.*

20. In reliance on both sets of AT&T's representations and with the expectation that Ms. Perry (or another appropriate family beneficiary) would receive the Plan's death benefit, Mr. and Ms. Perry made certain financial decisions.

21. Among other things, beginning in the fall of 2013 and continuing through 2016, the Perrys paid for part of their granddaughter's private high school tuition by liquidating some of their investments. Specifically, although their granddaughter received a partial scholarship for the school, the Perrys covered the remaining amount, which was somewhere between $13,000 and $15,000 per year.

22. Likewise, in 2016, again in reliance on their expected financial security from the Plan's death benefit, the Perrys gave their son $25,000 for repairs on his home.

23. On June 1, 2019, Mr. Perry passed away.

5

24. Soon thereafter, Ms. Perry discussed the Plan's death benefit with AT&T representatives (at the Fidelity Service Center). As a result of those discussions, Ms. Perry, with forms dated August 22, 2019, made a formal claim for the death benefit. In doing so, she submitted to the AT&T representatives the earlier AT&T documents showing her entitlement to the benefit.

25. In addition, to address any concerns about whether Mr. Perry was receiving a true "service pension" under the Plan at the time of his passing, Ms. Perry sent AT&T's representatives a copy of the actual "AT&T Management Pension Summary" document that AT&T had prepared for Mr. Perry back at the time of his early retirement election. As the document plainly states, the "type" of pension Mr. Perry received as a result of the early retirement package was "Service." **Exhibit E**.

26. Despite this, AT&T (through its representatives at Fidelity Service Center) denied the claim. According to it, Mr. Perry never worked 25 *actual* years (a key eligibility requirement for being deemed eligible for a "service pension" and thus the death benefit), and therefore, Ms. Perry was not entitled to the death benefit.

27. Ms. Perry appealed the decision, but AT&T upheld the denial. In doing so, it reiterated its position that Mr. Perry was required to work 25 *actual* years in order for Ms. Perry to be eligible for the death benefit. It also said, however, that its earlier letters to Mr. Perry about Ms. Perry (or another appropriate beneficiary) being eligible for the death benefit were "erroneously sent."

28. This lawsuit followed.

29. This litigation is appropriate under ERISA because to the extent applicable, Ms. Perry has exhausted all administrative remedies related to her claim in this case.

30. This lawsuit also is timely filed within the applicable statutes of limitations.

## COUNT I:
## ENFORCE AND CLARIFY RIGHT TO BENEFITS (29 U.S.C. § 1132(a)(1)(B))

31. The allegations of paragraphs 1-30 are realleged as if fully set forth herein.

32. As is clear from the allegations stated herein, Ms. Perry made a timely, proper and meritorious claim for the pensioner death benefit under the Plan.

33. Despite the meritorious nature of Ms. Perry's claim, AT&T wrongfully denied her claim for the death benefit.

34. AT&T's denial decision should be overturned because it is wrong, incorrect, improper, unreasonable, unlawful, an abuse of discretion, arbitrary and capricious, and otherwise violative of ERISA. Most notably, the decision contradicts the plain language of the Plan, which states that a beneficiary is eligible for a death benefit when the pensioner "is receiving" a service pension at the time of his death. Since Mr. Perry was, in fact, receiving a "service pension" at the time of his death, Ms. Perry should have received the death benefit.

35. The unreasonableness of AT&T's denial decision also is shown by the fact that it labors under a financial conflict of interest vis-à-vis the benefits to be paid to Ms. Perry. Specifically, where an entity, such as the Company here, both administers the Plan *and* pays for the Plan benefits, its profits (or losses) depend in part on how the actual cost of providing Plan benefits diverges from its estimates of such costs. Thus, over time, a predilection to deny benefits pays well, even for relatively modest benefits. Under ERISA, such a conflict must be weighed as a factor in determining whether AT&T's denial decision was reasonable and/or correct. And here, such conflict weighs *against* the reasonableness of the denial decision.

36. The Court also should award Ms. Perry her attorney's fees and all other appropriate relief under ERISA, as requested below, for having to litigate this particular issue in this lawsuit.

37. The administrative process applicable to Ms. Perry's claim has been exhausted and her claim is ripe for judicial review in this Court.

**COUNT II:**
**REQUEST FOR FULL AND FAIR REVIEW UNDER ERISA**
**(REQUEST FOR REMAND – IN THE ALTERNATIVE)**

38. The allegations of paragraphs 1-37 are realleged as if fully set forth herein.

39. For purposes of this Count, Ms. Perry requests that the Court hold that AT&T's decision to deny her claim for the Plan's death benefit was wrong, incorrect, improper, unlawful, unreasonable, an abuse of discretion, arbitrary and capricious, and otherwise violative of ERISA.

40. For purposes of this Count, in the event the Court cannot conclude based on the present administrative record that Ms. Perry is entitled to the Plan's death benefit, then she requests, as an alternative remedy, that the Court remand the claim back to AT&T and the Plan for further review consistent with the full and fair review requirements of ERISA.

41. The Court should also award Ms. Perry her attorney's fees and all other appropriate relief under ERISA, as requested below, for having to litigate this particular issue in this lawsuit.

42. The administrative process applicable to Ms. Perry's claim has been exhausted and her claim is ripe for judicial review in this Court.

## COUNT III:
## BREACH OF FIDUCIARY DUTY UNDER ERISA

43. The allegations of paragraphs 1-42 are realleged as if fully set forth herein.

44. Under ERISA, AT&T, through the Committee, its Pension Service Center and its representatives at the Fidelity Service Center, owes Plan beneficiaries such as Ms. Perry a duty of loyalty and a duty to communicate accurately.

45. Assuming that Ms. Perry is not entitled to the death benefit under Plan's terms (which is denied), then AT&T, by and through its own communications and the communications of its representatives, breached its fiduciary duty to Ms. Perry and failed to give her accurate information in its communications about the death benefit.

46. Ms. Perry and her husband relied on AT&T's representations about her eligibility for the death benefit and made financial decisions based on their understanding that the death benefit would be paid when Mr. Perry passed away.

47. As a result of AT&T's breach of its fiduciary duty, Ms. Perry is entitled to appropriate equitable relief under § 1132(a)(3) of ERISA. The equitable relief requested here includes, but is not necessarily limited to, a surcharge in the amount of the death benefit at issue.

WHEREFORE, Plaintiff requests this Honorable Court to order, adjudge, declare and decree that:

(a) The denial of Ms. Perry's claim for the pensioner death benefit under the Plan was incorrect, wrong, unreasonable, arbitrary, capricious and an abuse of discretion;

(b) Ms. Perry is entitled to the death benefit under the Plan;

(c) Alternatively, Ms. Perry's claim for the death benefit should be remanded to AT&T for further review consistent with the "full and fair review" requirements of ERISA;

(d) Alternatively, that AT&T breached its fiduciary duty to Ms. Perry to provide her with accurate information about Plan benefits;

(e) As a result of AT&T's breach, Ms. Perry is entitled to appropriate equitable relief under ERISA, including but not necessarily limited to, a surcharge in the amount of the Plan's death benefit at issue.

(f) Ms. Perry be awarded pre-judgment interest;

(g) Ms. Perry be awarded post-judgment interest;

(h) Ms. Perry be awarded costs;

(i) Ms. Perry be awarded attorney's fees associated with this lawsuit; and

(j) Ms. Perry be awarded all such other further and appropriate equitable relief.

Respectfully submitted,

LORRAINE M. PERRY

By: /s/Richard F. Hawkins, III
Richard F. Hawkins, III, VSB# 40666
THE HAWKINS LAW FIRM, PC
2222 Monument Avenue
Richmond, Virginia 232220
(804) 308-3040 (telephone)
(804) 308-3132 (facsimile)
Email: rhawkins@thehawkinslawfirm.net

Counsel for Plaintiff